Good morning and thank you, Your Honor. Again, Shane Smith with McCormick Barstow on behalf of the Weiser Appellants. I'd like to start by touching on a few preliminaries I think the Court is well aware of. Number one, your standard of review in deciding whether or not the Court appropriately applied the anti-SLAPP statute to my client's abuse of process, malicious prosecution claims is de novo. Second, the evidentiary standard with which we should concern ourselves with my client's pleadings that confers to an amended complaint is just like a 12v6 motion. We need to look at the facts in the light most favorable to the complaint. And third, I think there's agreement with the District Court that this is not a transaction-by-transaction analysis. We're supposed to review the gravamen of the Weiser complaint. The District Court's opinion then goes on to dissect each individual transaction to see if in aggregate that adds up to what the Court believed to be a protective activity that was protected by the litigation privilege. But we would submit to Your Honors that the gravamen of the complaint is a little bit different. The fact that Mr. Hartleib was interjecting himself on the periphery of legal proceedings really isn't the issue. The issue is, as explained in the earlier set of facts about Mr. Hartleib and Mr. Weiser's first communications around the Sprint Nextel during the litigation and then the settlement of the Sprint Nextel case, Mr. Hartleib continued to use pretextual reasons to interfere with my client's ability to represent his clients in these cases set out in the pleadings. And Mr. Hartleib did that according to the First Amendment complaint. In order to apply pressure to Mr. Weiser to accept a quid pro quo, to accept Mr. Hartleib's continual entreaties to enter into a consulting arrangement or in a fee-sharing arrangement, which is not appropriate or ethical. The complaint, I also want to point this out at the front. The District Court opinion and, frankly, the briefs, concern themselves a lot with what happened in these various litigations in the 2000s and the 2010s. The complaint, though, also has facts about deposition testimony given by Mr. Hartleib in the context of the 2022 litigation in, I believe it was Pennsylvania. There, Mr. Hartleib testifies that he is doing so in order to disrupt my client's ability to represent his clients. For example, this is an excerpt of records, Appellant's excerpt of records 45. This is paragraph 178 of the complaint. Mr. Hartleib testified under oath that he inserted himself into the Sprint litigation because he saw his role as providing oversight of the Sprint settlement. In regard to when Mr. Hartleib sent an e-mail to Judge Vanot in Kansas years after Judge Vanot completed his… And on all of these things, I understand you think there's a larger scheme to it and an illicit purpose, and that's why you think it, in part, qualifies as an abusive process. But all of these things relate to communications with the court or with things that lead up to or are anticipatory of filing litigation. Isn't that enough at least to trigger both the scope of anti-SLAPP and then at least with respect to abusive process to trigger the litigation privilege? So that's the first step of the analysis. We would say no, that Mr. Hartleib did not engage in protective activity. And we would submit to the court that the district court did no analysis of… The activation is unprotected because the scope of that is fairly broad under the California law. Well, we would disagree that the cases cited by the district court say the protective activity is absolutely found in the case of an abusive process claim. Then the court cited five opinions where the action taken by the defendant was the filing of a complaint or a counterclaim. But I'm having trouble along with the judge. What is the unprotected activity here? Your Honor, in this case, Mr. Hartleib is sending unsolicited e-mails to judges and the court staff, which is outside the bounds of the main court proceeding. That's just one of the instances, right? That's the Big Lots derivative case. The Big Lots case, the Equifax case, the CenturyLink case. For the others, he received leave to file an amicus brief. It seemed like he was involved in the litigation of the other instances. In the Equifax case, the Big Lots case, he did file a pro se. We can call it leave to file an amicus brief. The Big Lots case in particular, he was not a Big Lots shareholder. So it's a person who had no standing who's e-mailing a court from out of the blue. The CenturyLink case, though, Your Honor, when Mr. Hartleib forwarded his complaints about Mr. Weiser's prior activity from a decade before to Judge Vanot, long after Judge Vanot was finished ruling on the Sprint settlement, that was not protective activity. That was well outside the bounds of any current court proceeding. And how is this, any of this, going to survive under the limitations? Your Honor, we have argued in the papers that the statute of limitations was equitably told. My client did bring a timely suit in late 2019 against Mr. Hartleib in Pennsylvania. That case was litigated through a jurisdictional phase and ultimately dismissed for improper venue. My client then refiled in California in 2022. And so we had argued under principles of equitable tolling that the statute was stayed and that my client had an opportunity to file in California, where we believe is the proper venue given Mr. Hartleib is a resident of Orange County here in California. What's the statute of limitations that applies? Three years. Why, what about the, why wouldn't the statute of limitations from Kansas apply? In regard to the malicious prosecution case? So as argued in our briefs, the issue is really whether the one-year statute of limitation in Kansas applies as opposed to the two-year for malicious prosecution in California. We don't think the district court got the analysis right on the third prong, excuse me, of the conflict of law analysis. If you read the district court's opinion, it acknowledges the fact that California has an interest in enforcing its malicious prosecution statute against its residents. There's an acknowledgment that the statute is longer at two years. That should be taken as an implication that the California legislature values the interest in enforcing its malicious prosecution statute against its residents stronger than does Kansas. When did the California action for malicious prosecution arise? It arose from Mr. Hartleib's filing of the case in Kansas, Your Honor. So it arose in Kansas? Yes. So why wouldn't it be barred regardless of this issue by the barring statute? I mean, you cite the, the parties cite the McCann case, but one of the things McCann discusses is the barring statute, and it arose in Kansas. And California law says if it arises in another state and is barred under the statute of limitations there, it can't be brought in California except on behalf of a California plaintiff, which you're not. That's not true, Your Honor. You know, however, the district court in our briefs have recognized that Mr. Hartleib can't hide behind the fact that he filed in Kansas, he is a California resident, and the statute of limitations should not be used as a sword to cut off my client, Mr. Weiser's, ability to seek redress. You have a case that says a barring statute doesn't apply for the reasons you just said. It seems to squarely control the situation. I do not have a case, Your Honor. I'm struck by something you earlier said. I thought you all voluntarily dismissed your defamation case in Pennsylvania. No, we did, Your Honor. Why? I actually don't know the reason why. Did you ever pursue some other tort claim other than abuse of process, tortious interference, and that just seems to come to mind given the factual allegations that he's trying to interfere with your clients and the suit? In Pennsylvania, there were claims of defamation and tortious interference, but in California we're primarily focused on abuse of process. The idea was to get to the point where a motion could be filed for a vexatious litigant order against Mr. Hartleib. And Weiser and we believed that we needed to be filed in California so the court would have personal jurisdiction over Mr. Hartleib. If I may, to go back to the main analysis in our conversation about protective activity, as the court was mentioning, the second prong of the analysis is whether or not the litigation privilege applies under the guise of whether or not my client, Mr. Weiser, has any minimal merit in his complaint, whether there's any probability of him succeeding. I would argue that the first prong of whether or not the litigation privilege analysis pertains, again, the 2019 email to Judge Vino's chambers had nothing to do with anything proceeding over Mr. Hartleib. Does anyone else cc'd on that email? There were other attorneys and there was a court administrative staff, Jill Born, who cc'd. What about the email to, I think it's Judge Watson, in another case? Were attorneys cc'd on that one? Yeah, that was Mr. Hartleib's common practice. Okay. So they were not true ex parte in the sense that the counsel were not advised of the content of the communication. I guess that's correct. They were regular but not true ex parte. They were talking privately to the court without the lawyers knowing. Your Honor, as jogging, I believe it was the Big Lots case, Mr. Weiser was not copied on the email, so I guess in that sense it was ex parte. Two points in my remaining time I'd like to make. Mr. Hartleib was not an authorized participant in the litigation under the second prong of the litigation privilege analysis, at least not at the time that he made his communication. And the complaint in the record does not show that the district courts, this would be the Equifax, the Big Lots, and the CenturyLink case. There's no indication that the judges in those matters ratified Mr. Hartleib's unauthorized participation in the case. You have in the Big Lots case a rejection of Mr. Hartleib's position, but still final approval of the settlement in that matter. In the Equifax case, you have a denial in this instance of my client's motion to be appointed lead counsel, but there is no acknowledgment of Mr. Hartleib's comments. And in CenturyLink, it is true that the judge in the District of Minnesota allowed Mr. Hartleib to speak to the court, but there's no indication in the record or in the complaint that the judge in that matter ratified Mr. Hartleib's intercession into the proceedings. So on that basis, in a situation where California law is pretty thin on this point, Mr. Hartleib was not an authorized participant when he made his communication, and the record taking the complaint in the light most favorable to my client doesn't show that the court ratified those decisions. Do you want to save some time for rebuttal? I will, except also to point out the standard for the final prong is that Mr. Hartleib had some reasonable connection to the case that he had when he made his communication. I'll point again to the CenturyLink matter where he was e-mailing Judge Vanneau in Kansas when there was nothing before the court, and I will reserve the balance of my time for rebuttal. Okay. Thank you, Your Honor. Thank you, counsel. I will hear now from Mr. Kerr. Good morning, Your Honors. Again, Chris Kerr on behalf of Michael Hartleib. May it please the court, I'd just like to pick up from where counsel left off, and I think that he keeps using this term authorized participant, and I don't believe that that's really the correct test. The communication needs to relate to a substantive issue, and it needs to be directed at some person having interest in the case. Whether or not Mr. Hartleib is himself a so-called participant in the litigation, I don't think that's part of the court's analysis. Under the anti-SLAPP statute, the focus needs to be on the activity of the defendant, as opposed to the cause of action alleged by the plaintiff. So if the communications are related to litigation, then it's correct to grant an anti-SLAPP motion on that point. So that's why we have, while the First Amendment complaint alleged these three different causes of action, one of which Judge Cardi found wasn't even a cause of action, the vexatious litigant order, as to abusive process and malicious prosecution, looking at the activity of Mr. Hartleib, Judge Cardi found all of it was protected activity. Well, what about, in my understanding, is that the one exception to the threshold applicability of the anti-SLAPP statute is if something is essentially illegal as a matter of law, constitutionally unprotected. Isn't a true ex parte communication with the court illegal? And wouldn't that then fall within an exception? In this case, Your Honor, I would make the point that Mr. Hartleib is not an attorney. And therefore, whether he has a communication with the court, he's not subject to the same rules that we are all subject to. So if there's an ex parte communication with the court, that may be a mistake on his part. He might have a protected right, as protected by the SLAPP statute, to make ex parte communications to courts about the matters pending in front of them, privately. Yes, Your Honor, if it relates to a substantive issue and is directed at some person having interest in the case, then I believe it would fall under the protection of the anti-SLAPP statute. But then when you turn to the issue of litigation privilege, that's where this issue of whether or not the communication is made by litigants or other participants authorized by law, and there the irregular nature of the communications seems to implicate that element. But under abuse of process, the plaintiff would need to show that there's a contemplated ulterior motive and a willful improper act. And I think the willful term there can shed some light on the situation where we have someone who's not an attorney who's engaging in these acts and may not be fully aware that, you know, as the court refers to a true ex parte communication. I don't see anything about scienter. It says that it should be protected by the litigation privilege. So you're going to get past the first prong of anti-SLAPP. Then on the merits, your defense is to abuse of process as litigation privilege. But one of the elements is that it's a communication from either a litigant or someone authorized by law. And bystanders sending ex parte communications to courts doesn't seem to fall within that element. Well, Your Honor, in several instances, my client was actually granted leave to file amicus. I understand that. And that may be off, but we have the questions whether there's anything in this complaint that survives. And if it does have allegations of a genuine ex parte communication to a court, that doesn't seem authorized by law and, therefore, it seems not protected by the litigation privilege. Unless I'm missing something and you'll set me straight. Well, Your Honor, I think if it relates to the case, if it's not, if there's no ulterior motive or improper, a willful improper act. But they allege an improper motive. They essentially wanted to extort a consulting arrangement out of them. And I'm going to continue to trash your name to every court you show up in unless you give me this, you know, deal that's going to give me a nice flow of income. That's not an improper. It seems, that element seems satisfied in the complaint. I think based on the timing of that, it doesn't hold up. Because that was an offer that was made by Mr. Hartley. Again, not an attorney. Related to the Sprint case, which at the time most of these subsequent communications occurred, the Sprint case was already over. So the idea that he was going to engage in some kind of agreement with the Weiser firm going forward, that was off the table at that point. I thought there was maybe, I'm misremembering, I thought there was a later point where he re-raised that subject a second time. Am I mistaken on that? I'm not sure about that, Your Honor. I know in this case, Weiser's arguing that there was no attorney-client relationship ever entered into with Mr. Hartley. But let's assume there was and it went bad. I mean, at what point does a law firm have recourse to a client or a former client that contends they engaged in illegal malpractice or malfeasance and it's defamatory? Does a law firm have any recourse? In theory, they would, depending on where the statements are made. I think the facts of this case are that the statements are all made. They're all protected activity related to litigation, subject either to anti-SLAPP or to the absolute litigation provision. Could an argument be made that your client's sort of inviting himself into this forum that gives him this privilege? Yes, and I think he would have to go outside of the forum for there to be an actionable claim against him. But damage is done either way, right? That's as may be, but it's still protected activity. If the court doesn't have any further questions, I have nothing further. Well, do you want to ask about the statute of limitations with respect to the malicious prosecution? Litigation privilege does not apply to malicious prosecution, and so your argument there rests on the statute of limitations. Have you relied on the California borrowing statute, or do we do this only under the governmental interest? Are you asking about the abusive process cause of action or the malicious prosecution? I'm asking about the malicious prosecution. That's where you've raised statute of limitations, correct? Right, so in that cause of action, we're relying on the Kansas statute, which is a one-year statute. Because the case was brought in Kansas, we believe that Kansas law should apply. Right, but as I understand it, you presented that as under the governmental interest, and have you relied on the borrowing statute? Section 361. Or are you just doing this—have you waived that argument, and you're just relying on the governmental interest test? Well, I guess I'm not sure I understand the court's question. We are relying on the governmental interest test, but the statute is a one-year statute of limitations. So I guess I'm not clear on— Well, the determination of whose statute of limitations applies in federal court, you apply the choice of law rules of the forum. So California choice of law rules apply. And so my question is, there are two potentially relevant California choice of law rules. One is the standard governmental interest test, where you determine whether the provisions are different, is it a true concept, who has the greater interest and which would be more impaired. That's the standard choice of law rule for California. But there's also a second California choice of law rule called the borrowing statute in 361. Both of these are discussed in McCann, which you've cited. And the borrowing statute seems potentially relevant here, but I'm not sure that you've raised that issue. Well, I would say that we've raised it by citing for the case, Your Honor, but no, I don't think that we specifically made that argument. Okay. Well, one question I want to ask is, as you're probably aware, that this court earlier this year granted a petition for a re-hearing en banc on whether California's anti-SLAP statute should apply in federal court. The party settled before we could hear this case. I mean, isn't this case a good candidate to reconsider that question here? I mean, your client has engaged in harassing obsessive behaviors now, trying to shield himself with the anti-SLAP statute in federal court. Well, I would say potentially yes. Would you oppose it if whatever our disposition says, court sui sponte, that we hear this case en banc to address this question? I think that, well, honestly, Your Honor, I don't know. If the court doesn't have any further questions.  All right. Thank you. We'll hear rebuttal now from Mr. Smith. Thank you, Your Honor. Starting with the policy question and the question about whether to hear this case en banc, this issue wasn't briefed, to be fair to my colleague, but I would say that yes, it should be, for two reasons. One, the anti-SLAP statute doesn't say that all communications made in a judicial or quasi-judicial proceeding are privileged, period. The legislature set out elements, and there has to be then some bound to the anti-SLAP statute. Mr. Hartley's position is that anything he said, as long as it was to or in a court, is then privileged. And that's also the decision the district court made. I will admit that we're all struggling with finding that border, and en banc review, for that reason, would be appropriate. I mean, this ultimately is a 12b-6 wrapped around a SLAP. This isn't a case where the SLAP statute ultimately makes all that much difference. Because, yes, you're arguing over whether or not prong one is there, but prong two is just a 12b-6 issue, and you could just have done the same motion as a 12b-6, saying that, as a matter of law, these claims fail on the face of the complaint because of the litigation privilege and the statute limitations, both of which are ones that can be raised, the defenses that can be raised by 12b-6. So it all just seems like it doesn't look like a particularly good vehicle to address the implications of SLAP, perhaps. Well, correct, but the federal rules have their own case disposition rules in 1256. But also anti-SLAP is popular with plaintiffs or attorneys because it carries mandatory attorney fees, as the court is aware. And we're not here on the special anti-SLAP interlocutory appeal under the collateral order. We're on a final judgment 1291, correct? In my remaining 20 seconds, I echo a point the court made, the big lots communication made by Mr. Weiser, paragraph 170, in our complaint. That was ex parte. I'd also like to point out deposition testimony from Mr. Hartley, excerpts of Record 45. He testified he had no expectation that Judge Vindale would respond. So if that does not clarify that he was not an authorized participant when he contacted the Kansas court in 2019, I don't know if the court can find any better fact in the complaint. Can you address the issue I raised before? Did you allege in the complaint here that he came back to this issue of a consulting agreement, or is your opposing counsel correct that that just came up in connection with the earlier Sprint litigation? Your Honor, the complaint alleges that the quid pro quo offer was a continuing theme throughout the facts. I'll point, for example, excerpts of Record 24 and 25, a conversation Hartley and Weiser had in regards to the Whitmer v. Sugarman case. This is in the Central District of California. Coincidentally, Mr. Hartley is alleged to have said he's very familiar with Judge Carney, who is our judge below in the district court. He offers to collaborate with my client, Mr. Weiser, on some other unrelated cases involving LC and A10. The complaint is, in fact, replete with instances of Mr. Hartley putting himself out there as a professional plaintiff. And there's allegations towards the end of the complaint where his fines team at the Abelson search firm actually calls him that. So I think Your Honor can search the complaint and find multiple instances where this quid pro quo keeps coming up which is the reason, as alleged, why Mr. Hartley was applying this pressure. And I see that I'm over my time. All right. Thank you, counsel. Thank you, Judge. The argument will be submitted. Thank you, Your Honor. That concludes our calendar for this morning. All rise. Hear ye, hear ye. All persons having had business with the Honorable United States Court of Appeals for the Ninth Circuit will now depart for this session. Session is adjourned.
judges: COLLINS, LEE, Rodriguez